UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 23-20883-CIV-ALTMAN
21-20496-CR-ALTMAN

**ANTHONY EZEQUIEL LOPEZ**,

    *Movant*,

v.

**UNITED STATES OF AMERICA**,

    *Respondent.*

_____/

## ORDER

Anthony Ezequiel Lopez has filed a motion to vacate his federal conviction and sentence under 28 U.S.C. § 2255. *See* Amended Motion [ECF No. 5] at 1. The Respondent has submitted its Response [ECF No. 16], and Lopez filed his Reply [ECF No. 17], so the case is ripe for resolution. After careful review, we **GRANT** Lopez an evidentiary hearing on his claim that, by failing to file a notice of appeal, trial counsel's performance was constitutionally ineffective. But we **DENY** all of Lopez's remaining claims on their merits.

### THE FACTS

A grand jury in our District charged Lopez with two crimes: selling child pornography (Count 1) and possessing child pornography (Count 2). *See* Indictment, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. Sept. 30, 2021), ECF No 5 at 1–3. On April 27, 2022, Lopez and the Government entered into a plea agreement, by which the Government agreed to dismiss Count 2 of the Indictment in exchange for Lopez's plea to Count 1. *See* Plea Agreement, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. May 11, 2022), ECF No. 25 at 1. The plea agreement *didn't* require Lopez to waive his right to appeal. *See generally ibid*.

Lopez did, however, admit in a factual proffer that, "had [his] case proceeded to trial, the United States would have proven beyond a reasonable doubt" that Lopez: (1) "had uploaded sixty-three (63) child pornography/child sex abuse materials on Twitter," which included "images and videos . . . of children under the age of 12 years, some as young as infants, engaged in sexual activity," Factual Proffer, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. May 11, 2022), ECF No. 26 at 1–2; (2) was "selling child pornography and child sexual abuse material on Twitter and posting screenshots of the available files and folders that are for sale," *id.* at 2; (3) had sold to an undercover officer, via Twitter, "approximately two hundred fifty (250) child pornography/child sexual abuse material videos that included images of the sexual abuse of infants and toddlers," *id.* at 3–4; (4) admitted to law enforcement that "he used several messaging applications including Twitter, Instagram, Kik and Telegram, to receive, advertise, and sell child pornography for approximately two years" and that he had "used MTC and Cash App to receive payments from the sale of child pornography," *id.* at 6; and (5) owned a cell phone that was "found to contain numerous files of child pornography," including "files of child pornography that were the same as reported by Twitter," *id.* at 7.

We sentenced Lopez to 135 months in the custody of the Bureau of Prisons—to be followed by twenty years of supervised release. *See* Judgment, *Lopez v. United States*, No. 21-20496-CR-ALTMAN (S.D. Fla. Aug. 29, 2022), ECF No. 40 at 2–3. Lopez didn't appeal his conviction or sentence. *See generally* Docket. Instead, on February 26, 2023,[1] Lopez filed a "Motion for Reconsideration Based on Newly Discovered Evidence," alleging that he learned of new evidence which proved that "he did not violate the statute's elements[.]" Motion for Reconsideration, *Lopez v.*

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

*United States*, No. 21-20496-CR-ALTMAN (S.D. Fla. Mar. 3, 2023), ECF No. 43 at 3. We construed this "Motion for Reconsideration" as a motion to vacate under § 2255 because "the substance of the Motion attacks the legality of the Defendant's sentence[.]" Paperless Order, *Lopez v. United States*, No. 21-20496-CR-ALTMAN (S.D. Fla. Mar. 6, 2023), ECF No. 44. We then ordered Lopez to amend his motion because his original motion to vacate "does not provide enough details to establish that he's entitled to relief." Order to Amend [ECF No. 3] at 2. Lopez complied and filed his Amended Motion on March 14, 2023. *See* Amended Motion at 12. That Amended Motion is now ripe for review.

## THE LAW

### A. Motions to Vacate Under 28 U.S.C. § 2255

Because collateral review isn't a substitute for a direct appeal, a movant can proceed under § 2255 only in extremely limited circumstances. As relevant here, a prisoner is entitled to relief under § 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." § 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge will not do service for an appeal."). If a court grants a § 2255 claim, the court "shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). The movant bears the burden of proving his § 2255 claim. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our conclusion that a § 2255 movant must prove his [claim] on a long line of

authority holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)), *cert. denied*, 139 S. Ct. 1168 (2019).

### B. Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial," counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. If the defendant pleads guilty, the prejudice prong is modified so that the defendant must instead show "that there is a reasonable probability, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## ANALYSIS

In his Amended Motion, Lopez asserts four grounds for relief. *First*, he claims that he's uncovered "newly discovered evidence," which proves that he "did not in fact distribute the photos in format[.]" Amended Motion at 4. *Second*, he says that his "sentence is substantively unreasonable in light of the circumstances at hand[.]" *Id.* at 5. *Third*, he argues that his trial counsel was ineffective and committed at least six errors during the plea-bargaining process. *See id.* at 7. *Fourth*, he alleges that counsel was ineffective because he "only saw me 3 times while I was in pretrial custody" and "would not answer calls or return messages from me or my family." *Id.* at 8. We'll address each claim in turn.

### A.    Ground One

In Ground One, Lopez claims that "newly discovered evidence [has been] brought to Petitioner's attention regarding actual distribution [which] solidifies that Petitioner did not in fact distribute the photos in format." Amended Motion at 3. But, although we warned Lopez that his Amended Motion needed to "tell us what this 'newly discovered evidence' is," none of Lopez's pleadings provide any specifics. Order to Amend [ECF No. 3] at 2; *see also* Response at 8 ("Movant does not allege any facts as to what newly discovered evidence exist[s]."). Instead, we agree with the Respondent that Lopez is actually "challenging the sufficiency of the evidence" against him. Response at 8; *see also* Reply at 2 ("Movant wanted to challenge the sufficiency of the evidence on Direct Appeal[.]").

5

Lopez apparently believes that the Government failed to prove he actually "distributed" child pornography "in format," as the statute requires. *See* Supplemental Motion [ECF No. 9] at 2 ("[Lopez] now presents the following facts regarding the issues of Child Pornography, and the Distribution factors surrounding his case . . . as enough proof that the actual distribution factors are newly discovered."); Reply at 3 ("Newly discovered evidence brought to the Petitioner's attention regarding 'actual distribution' solidifies that Petitioner did not in fact distribute the photo's [sic] in format[.]").[2]

Under 18 U.S.C. § 2252(a)(3), a defendant can be found guilty of selling child pornography if he:

> **(B)** knowingly sells or possesses with intent to sell any visual depiction that has been mailed, shipped, or transported using any means or facility of interstate or foreign commerce, or has been shipped or transported in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported using any means or facility of interstate or foreign commerce, including by computer, if—
>
> > **(i)** the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> >
> > **(ii)** such visual depiction is of such conduct;

18 U.S.C. § 2252(a)(3)(B). In short, "the essential elements under § 2252(a)(3)(B) are that the defendant (1) sell (2) a visual depiction that has been transported in interstate or foreign commerce (3) that involves a minor (4) engaging in sexually explicit conduct." *Plaintiff B v. Francis*, 2010 WL 497375, at *4 (N.D. Fla. Feb. 5, 2010) (Smoak, J.).

---

[2] The Government urges us to dismiss Ground One as procedurally defaulted because Lopez "could have raised [the issue] on direct appeal but failed to do so." Response at 8; *see also Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."). Since we agree that this claim has been procedurally defaulted, the next step would typically be to decide whether Lopez has met one of the two exceptions to the procedural-default rule. *See Seabrooks v. United States*, 32 F.4th 1375, 1384 (11th Cir. 2022) ("To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence."). But, since Ground One "is due to be denied" on its merits anyway, we'll "skip over the[se] procedural bar issues" and resolve the claim on the merits. *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011).

We note, right off the bat, that "distribution" is *not* an element of selling child pornography under § 2252(a)(3); distribution of child pornography (as opposed to its sale) is criminalized by § 2252(a)(2), not § 2252(a)(3). *See* 18 U.S.C. § 2252(a)(2) (penalizing any person who "knowingly receives, or distributes, any visual depiction [of child pornography]"). We can only assume, therefore, that Lopez is challenging the Government's evidence that he *sold* child pornography.[3]

This argument is meritless. Since § 2252(a)(3) doesn't define the term "sell," we must look to understand that word's "ordinary, contemporary, common meaning at the time Congress enacted the statute." *United States v. Collins*, 854 F.3d 1324, 1331 (11th Cir. 2017) (cleaned up) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Section 2252(a)(3) was enacted on February 6, 1978. *See* Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2, 92 Stat. 7, 8 (1978). And the definition of the word "sell" today is the same as it was back in 1978: "[the] transfer of title to or possession of property for an agreed upon price, or the agreement by which such a transfer takes place." *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019) (first citing *Sell*, BLACK'S LAW DICTIONARY (4th ed. 1968); and then citing *Sell*, BLACK'S LAW DICTIONARY (10th ed. 2014)); *see also Sell*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/sell (last visited June 23, 2023) ("[T]o give up (property) to another for something of value (such as money)[.]").

That's obviously what Lopez did here. In his factual proffer, Lopez admitted that he possessed child pornography and that he "used the username 'doqxr0006' and several variations of usernames containing 'qxr' on messaging applications including Twitter, to receive, advertise, and sell child

---

[3] We also don't know what Lopez means when he says that the child pornography wasn't "in format." Amended Motion at 3. We emphasize, however, that § 2252(a) criminalizes the possession, distribution, and/or sale of child pornography *even if* it's in an electronic format that's shared with others. *See, e.g., United States v. Diaz*, 615 F. App'x 649, 650 (11th Cir. 2015) (affirming convictions under § 2252(a)(2) & (a)(4) where the defendant admitted to "posting an image of child pornography on his Twitter account" and "trading images through the Kik Messenger application").

7

pornography" and that he "used the MTC and Cash App to receive payments from the sale of child pornography." Factual Proffer, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. May 11, 2022), ECF No. 26 at 6. More problematically for Lopez, he indisputably sent an undercover officer an "encrypted file sharing folder titled 'cp[,]' . . . [which] contain[ed] approximately [250] child pornography/child sexual abuse material videos" in exchange for a $50.00 payment via online money transfer. *Id.* at 4. The facts here are unavoidable. Lopez possessed child pornography, and he then sold that child pornography to prospective buyers. Since Lopez admitted in his factual proffer that the Government had enough evidence to prove that he *sold* child pornography, there was sufficient evidence to convict him under § 2252(a)(3). We therefore **DENY** Ground One.

      **B.**      **Ground Two**

In Ground Two, Lopez claims that his sentence is "substantially unreasonable . . . in light of the circumstances at hand[.]" Amended Motion at 5. Again, Lopez doesn't explain what these "circumstances" are, but a fair reading of his Reply indicates that he blames the severity of his sentence on his lawyer's (alleged) foibles. *See* Reply at 4 ("Movant declares that his sentence is unreasonable substantially, and this is due to his Attorney not taking his best interests at heart as mandated by his Constitutional Oath to represent his client.").

A § 2255 motion to vacate cannot be used to challenge the legality of a sentence "'unless the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). A sentence constitutes a "complete miscarriage of justice" in one of three (and only three) circumstances: (1) when the sentence was above "the statutory maximum sentence prescribed by Congress"; (2) when the movant "can prove he is . . . actually innocent"; or (3) when "a prior conviction used to enhance [the movant's] sentence has been vacated." *Id.* at 1138–39. Even if we were prepared to assume that Lopez's sentence was "substantively unreasonable,"

therefore, that "error" wouldn't be redressable on collateral review because Lopez wasn't sentenced above § 2252(a)(3)'s statutory maximum of twenty years. *See Spencer*, 773 F.3d at 1143 ("A substantively unreasonable sentence does not result in a 'complete miscarriage of justice' if that sentence is less than the statutory maximum sentence Congress has enacted."); *see also* 18 U.S.C. § 2252(b)(1) (setting a statutory maximum of twenty years for violations of § 2252(a)(3)). And, since Lopez doesn't allege that he's "actually innocent"[4] or that his sentence was improperly enhanced with a vacated prior conviction, his sentence cannot be challenged here.[5] Ground Two is thus **DENIED**.

C.   **Ground Three**

In Ground Three, Lopez alleges that his lawyer gave him bad advice during the plea-bargaining phase of his case. Specifically, Lopez says that his attorney (1) "told me not to appeal . . . because the appeal court would deny it," (2) "told me not to take [the case] to trial based on the evidence against

---

[4] To the extent one might construe Lopez's Amended Motion as advancing an actual-innocence claim, that claim would fail in light of what Lopez admitted in his factual proffer, where (again) he conceded that the Government could prove all the elements of the offense. *See generally* Factual Proffer, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. May 11, 2022), ECF No. 26; *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) ("[The defendant] also acknowledged signing the factual proffer . . . . These statements, under oath, are afforded great weight.").

[5] One more thing. Lopez's presentence investigation report ("PSI") found that—with a total offense level of 37 and a criminal history category of I—Lopez's advisory guideline range was between 210 and 240 months. *See* PSI, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. Aug. 19, 2022), ECF No. 34 ¶ 103. Although we didn't sentence Lopez to the minimum mandatory term of five years (which is what defense counsel had requested), *see* Sentencing Memorandum and Motion for Variance, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. Aug. 19, 2022), ECF No. 33 at 14, our sentence of 135 months was *far below* his advisory guideline range, *see* Judgment, *Lopez v. United States*, No. 21-20496-CR-ALTMAN (S.D. Fla. Aug. 29, 2022), ECF No. 40 at 2. And, it goes without saying, a sentence that constitutes a significant downward variance from the bottom of the range is almost never "substantively unreasonable." *See United States v. Ritsema*, 854 F. App'x 337, 340 (11th Cir. 2021) ("We cannot conclude that the district court committed a clear error of judgment by sentencing Ritsema to less than half of the guidelines range instead of the 180-month statutory minimum sentence he sought."); *United States v. Dominguez-Reyes*, 382 F. App'x 919, 921 (11th Cir. 2010) ("And we cannot say, on this record, that the district court's downward variance sentence was outside the range of reasonable. This is particularly true where, as here, the district court's decision to vary downward . . . clearly demonstrates that it considered Dominguez–Reyes's arguments in favor of a reduced sentence."); *see also United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013) ("[I]t is only the rare sentence that will be substantively unreasonable.").

me," (3) "told me that if I took it to trial it wouldn't look good on [counsel's] record," (4) "forced me to take the plea," (5) "kept rushing me to take the plea," and (6) "kept telling me the last days were coming and to take the plea and make a decision." Amended Motion at 7. As this recitation makes plain, the latter five claims all blame counsel for forcing or coercing Lopez into a plea and for otherwise dissuading him from going to trial. For two reasons, we reject all five of these claims

*First*, Lopez's claim that counsel "forced," "rushed," or otherwise coerced him into accepting the plea—and that he improperly prevented Lopez from going to trial—is conclusively refuted by the record. During Lopez's change-of-plea hearing—and after placing him under oath—we specifically asked Lopez whether anyone had forced, threatened, or coerced him into accepting the plea agreement:

> The Court: *Did you get a chance to ask your lawyer any questions you might have had about the case and to have him answer those questions to your satisfaction?*
>
> Defendant Lopez: *Yes*, Your Honor.
>
> [. . . .]
>
> The Court: Now, have you had a chance to review all of the discovery in the case? Those are the written materials, or pictures, or videos, or other files that the government would have turned over to your lawyer as part of the government's obligations in the case[?] . . .
>
> Defendant Lopez: Yes, Your Honor.
>
> [. . . .]
>
> The Court: Anything about [your lawyer's] representation with which you are not satisfied, [Mr. Lopez]? . . .
>
> Defendant Lopez: No, Your Honor.
>
> [. . . .]
>
> The Court: [Mr. Lopez], *has anyone tried to force or threaten or coerce you in any way* in order to get you to plead guilty here today? . . .
>
> Defendant Lopez: *No*, Your Honor.

10

Change of Plea Hr'g Tr. [ECF No. 16-1] at 16–17, 38 (emphasis added). We also asked Lopez whether he accepted "everything in the factual proffer as true and accurate," and he answered "Yes." *Id.* at 45–46.

Statements made during a change-of-plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Since Lopez already swore under oath that he had ample time to review the evidence against him, that no one (including his attorney) had forced or coerced him into pleading guilty, and that he committed all the criminal acts set forth in the factual proffer, his conclusory assertions to the contrary are insufficient to meet his heavy burden here. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) ("Winthrop-Redin then testified under oath and in detail that his plea had not been induced by threats or force leveled against him or his family. Indeed, because Winthrop–Redin made statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." (cleaned up)); *see also Connolly v. United States*, 568 F. App'x 770, 771 (11th Cir. 2014) ("Connolly's conclusory allegations of coercion by his attorney have failed to rebut the strong presumptions . . . that Connolly's sworn statements in his plea agreement and at his change-of-plea hearing were true."). As we've said many times, "[i]n the world of habeas corpus, there are no take-backs." *Forbes v. Sec'y, Dep't of Corr.*, 2022 WL 17082912, at *9 (S.D. Fla. Nov. 18, 2022) (Altman, J.) (citing *Blackledge*, 431 U.S. at 73–74).

*Second*, Lopez's claim that, but for his lawyer's faulty advice, he would have rejected the plea agreement and proceeded to trial is, for two reasons, absurd on its face. When a defendant alleges that counsel improperly advised him to plead guilty, he must show *both* "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty" *and* that "a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

11

*One*, Lopez has already admitted—in a signed factual proffer he stipulated to under oath in open court—that the Government's evidence against him was overwhelming. *See generally* Factual Proffer, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. May 11, 2022), ECF No. 26 (noting that an IP address in Lopez's name uploaded dozens of pornographic images and videos to Twitter, that Lopez confessed to using "messaging applications . . . to receive, advertise, and sell child pornography," and that Lopez's cell phone contained the very same files of child pornography that had been sold on Twitter). The Eleventh Circuit routinely rejects similar post-hoc arguments that a defendant "received ineffective assistance of counsel when his trial attorneys advised him to plead guilty" where (as here) "[t]he evidence of [the defendant's] guilt . . . was overwhelming." *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015); *see also Gutierrez v. United States*, 560 F. App'x 924, 927 (11th Cir. 2014) ("[I]t would not have been rational for Mr. Gutierrez to reject the plea bargain. . . . [T]here was overwhelming evidence against Mr. Gutierrez [and] Mr. Gutierrez had the prospect of receiving favorable sentencing adjustments as a result of his plea."); *Martin*, 949 F.3d at 670 ("[The defendant] also acknowledged signing the factual proffer . . . . These statements, under oath, are afforded great weight."); *Marshall v. United States*, 2013 WL 12202348, at *3 (S.D. Fla. Dec. 2, 2013) (White, Mag. J.) ("The factual proffer that Marshall admitted was true sets forth the drug amount attributable to him as well as his possession of a firearm in the glove compartment of the car in which he was a passenger when he made a drug transaction. Marshall's present attempt to disavow these facts should be rejected." (citing *Blackledge*, 431 U.S. at 74)), *report and recommendation adopted*, 2014 WL 12690489 (S.D. Fla. Oct. 23, 2014) (Seitz, J.).

*Two*, had Lopez gone to trial, he almost certainly would have been convicted of Count 2 of the Indictment—which charged him with only possessing child pornography in violation of 18 U.S.C. § 2252(a)(4) and which would have exposed him to an additional twenty-year term of imprisonment. *See* 18 U.S.C. § 2252(b)(2) ("Whoever violates . . . paragraph (4) of subsection (a) . . . if any visual

12

depiction involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age . . . shall be fined and imprisoned for not more than 20 years[.]"). Indeed, our case is unique because, in exchange for the Defendant's plea, the Government agreed to a *below*-guidelines sentence, *see* Sentencing Memorandum and Motion for Variance, *United States v. Lopez*, No. 21-20496-CR-ALTMAN (S.D. Fla. Aug. 19, 2022), ECF No. 33 at 14 (noting a "joint recommendation of the parties [to] impose a sentence below the advisory guideline range")—something it very likely wouldn't have done for a defendant who went to trial, *see Corbitt v. New Jersey*, 439 U.S. 212, 219–20 (1978) ("The plea may obtain for the defendant the possibility or certainty not only of a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty, but also of a lesser penalty than that required to be imposed after a guilty verdict by a jury." (cleaned up)); *see also, e.g.*, *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) ("The plea bargain lowered his sentence of imprisonment by eight years [from the statutory minimum of ten years]. Miranda-Alfaro cannot show that a rational person would have rejected his plea bargain."); *Harwood v. United States*, 2023 WL 3686770, at *4 (S.D. Fla. May 26, 2023) (Ruiz, J.) (finding no prejudice where, "[b]y pleading guilty, Movant not only avoided a life sentence but also got the benefit of a jointly recommended twenty-five year sentence"). Again, the Eleventh Circuit has looked skeptically on a defendant's collateral claim that, but for his lawyer's bad advice, he would have gone to trial in circumstances where (as here) that trial would have exposed him to additional penalties. *See Schwartz v. Sec'y, Fla. Dep't of Corr.*, 842 F. App'x 442, 447 (11th Cir. 2021) ("In retrospect, it would therefore have been 'irrational' for [the defendant] to proceed to trial given her grim chance of acquittal [and] the potential for a greater sentence for taking the case to trial[.]"). We therefore reject five of Ground Three's six subclaims.

Ground Three's final subclaim, though, is a different story. In his Amended Motion, Lopez claims that counsel performed ineffectively when he told Lopez "not to appeal . . . because the appeal

13

court would deny it anyway." Amended Motion at 7. And, in his Reply, Lopez adds that he "did instruct his Lawyer to file a notice of appeal, and his lawyer failed to do so[.]" Reply at 2.

The Supreme Court has recognized two *different* errors a lawyer can make when advising his client about a possible appeal. *One*, counsel can fail to consult with the defendant about his interest in an appeal. A defense attorney "has a constitutional duty to consult with a defendant about an appeal when: (1) any rational defendant would want to appeal; *or* (2) the defendant reasonably demonstrated an interest in appealing." *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) (emphasis added). The defendant must then show prejudice by alleging that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). As we've indicated, Lopez advances this first kind of claim in his Amended Motion. *See* Amended Motion at 7. *Two*, counsel errs when he ignores his client's specific request to file a notice of appeal. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477 (citing *Rodriquez v. United States*, 395 U.S. 327, 331–32 (1969)). As we've said, Lopez makes this more serious allegation for the first time in his Reply. *See* Reply at 2.

Lopez has plausibly alleged that he demonstrated an interest in appealing and that he was only dissuaded from doing so by counsel's opinion that the "appeal court would deny it anyway." Amended Motion at 7; *see also* Reply at 2 ("Movant wanted to challenge the sufficiency of the evidence on Direct Appeal, but was told not to by Counsel."). Under our precedents, so long as the defendant can show that he was interested in an appeal, "the Court must presume that Movant was prejudiced even if his appeal would have been meritless." *Gonzalez v. United States*, 2023 WL 122193, at *8 (S.D. Fla. Jan. 6, 2023) (Ruiz, J.); *see also Garza v. Idaho*, 139 S. Ct. 738, 747 (2019) ("[W]hen deficient counsel causes the loss of an [appeal], it will not bend the presumption-of-prejudice rules simply because a particular defendant seems to have had poor prospects."); *Thompson*, 504 F.3d at 1207–08 ("Because a direct

14

appeal of a federal conviction is a matter of right, we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal." (cleaned up)). "We need not decide whether a rational defendant would want to appeal" because "there is reason to think that [he] reasonably demonstrated to counsel that he was interested in appealing." *Rios v. United States*, 783 F. App'x 886, 892 (11th Cir. 2019) (quoting *Flores-Ortega*, 528 U.S. at 480); *see also Nelson v. United States*, 2023 WL 2854433, at *4 n.5 (S.D. Fla. Apr. 10, 2023) (Altonaga, C.J.) ("The Government argues that 'no rational defendant would have wanted to appeal.' The Court need not decide whether a rational defendant would want to appeal when there is reason to think that Movant demonstrated he was interested in appealing." (cleaned up)). Since Lopez's claim is "not affirmatively contradicted by the record," he's entitled to an evidentiary hearing on **this one subclaim**. *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002).[6]

To recap: Of the six ineffective-assistance subclaims Lopez raised in Ground Three, we **DENY** five of them because those five are fully refuted by the record. The only subclaim that survives, then, is Lopez's allegation that defense counsel's advice prevented him from filing an appeal. *See* Amended Motion at 7. At the evidentiary hearing, Lopez may proffer evidence for his view that his lawyer failed to adequately consult with him about an appeal *and* that his counsel ignored his request to file a notice of appeal. We warn Lopez, however, that he will bear "the burden of sustaining his contentions by a preponderance of the evidence." *Tarver v. United States*, 344 F. App'x 581, 582 (11th Cir. 2009) (quoting *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)).

### D.   Ground Four

In Ground Four, Lopez complains that his attorney only met with him three times and failed to return his (and his family's) calls and messages. *See* Amended Motion at 8 ("Attorney only saw me

---

[6] Although we generally don't consider arguments "raised for the first time in a reply brief," *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009), we'll allow Lopez to argue at his evidentiary hearing that counsel rendered ineffective assistance by not filing a notice of appeal *after* Lopez told him to, *see* Reply at 2.

3 times while I was in pretrial custody . . . . Attorney would not answer calls or return messages from me or my family."). This claim fails for two reasons.

*First*, Lopez never says that, if his lawyer *had* met with him more or returned his (or his family's) calls, he "would not have pleaded guilty and would have instead insisted on going to trial." *Hill*, 474 U.S. at 59. So, although Lopez insists that his lawyer's hands-off approach violated his "Constitutional rights to effective counsel," Reply at 4, a lawyer isn't ineffective unless his poor performance *prejudices* the client, *see Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). Since Lopez doesn't allege that he was prejudiced by his lawyer's aloofness, he's failed to state a viable claim under *Strickland*. *See Hill*, 474 U.S. at 60 ("[I]n the present case we conclude that petitioner's allegations are insufficient to satisfy [*Strickland*'s] requirement of prejudice. Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.").

*Second*, Lopez admitted, under oath at his change-of-plea hearing, that he "had a chance to review [the] indictment, together with [his] lawyer," Change of Plea Hr'g Tr. [ECF No. 16-1] at 15; that he had "a chance to talk about the whole case with [counsel] prior to [the change-of-plea] hearing," *ibid.*; that he "[got] the chance to ask [his] lawyer any questions [he] might have had about the case and to have him answer those questions to [his] satisfaction," *id.* at 16; that he was fully satisfied with his lawyer's representation, *id.* at 17; that he "had a chance to review all of the discovery in the case" with his lawyer, *ibid.*; that he "discuss[ed] with [his] lawyer any possible defenses or defense strategies that [he] might have had to fight against the charges," *id.* at 18; that he had "a chance to review [the] plea agreement, together with [his] lawyer," *id.* at 24; that he "[got] to ask [his] lawyer any questions [he] had about [the factual proffer]," *id.* at 25; and that he talked to his lawyer about "how the sentencing guidelines might apply" to his case, *id.* at 27. As we've said multiple times already,

16

Lopez cannot ask us to ignore his repeated assurances—given under oath—that he had plenty of discussions with his lawyer about (almost) every aspect of his case before pleading guilty. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("[T]here is a strong presumption that the statements made during the [plea] colloquy are true.").

A "Section 2255 action is not designed to account for buyer's remorse." *Falgout v. United States*, 2013 WL 3712336, at *6 (N.D. Ala. July 12, 2013) (Proctor, J.). Ground Four is therefore **DENIED**.

### EVIDENTIARY HEARING

Lopez has shown that he's entitled to an evidentiary hearing—but *only* on his claim that counsel performed ineffectively when he "told [Lopez] not to appeal." Amended Motion at 7; *see also Winthrop-Redin*, 767 F.3d at 1216 ("A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." (cleaned up) (citing 28 U.S.C. § 2255(b))). Lopez, however, *isn't* entitled to a hearing on any of his other claims. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d

1196, 1199 (11th Cir. 2000)). We'll hold off on deciding whether a COA should issue until we've resolved Lopez's sole surviving subclaim.

\*     \*     \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** as follows:

1. The Court **GRANTS** an evidentiary hearing, under 28 U.S.C. § 2255(b), on the first subclaim of Ground Three.

2. All other claims in the Motion to Vacate [ECF No. 1] are **DENIED**.

3. In accordance with 28 U.S.C. § 2255(g), the Court hereby **APPOINTS** Jason Kreiss from the CJA list to represent Lopez at all further stages of this § 2255 proceeding. Mr. Kreiss will contact Mr. Lopez and file a notice of appearance on the docket **within 14 days of this Order**.

4. Pursuant to 28 U.S.C. § 636(b)(1)(A) and this District's Magistrate Judge Rules, the above-styled case is **REFERRED** to United States Magistrate Judge Lisette M. Reid for an evidentiary hearing and a Report and Recommendation. The date and time of that hearing will be set by Magistrate Judge Reid in a future order.

5. The Clerk is directed to **REOPEN** this case.

**DONE AND ORDERED** in the Southern District of Florida on June 26, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Anthony Ezequiel Lopez, *pro se*
       counsel of record

       Jason Kreiss, Esq.
       jwk@kreisslaw.com